Again, just for the record, 18-1032 United States v. Alderete, Appellant's Counsel, please make your appearance. Thank you, Your Honor. May it please the Court, Deb Roden with Woodhouse Roden Nethercott on behalf of the appellant, Victor Alderete. Mr. Alderete has appealed his denial of his motion to suppress. At the District Court, he raised, in essence, three arguments on that suppression. He argued that the stop of his vehicle was unlawful and that the subsequently obtained cocaine in his vehicle and his post-arrest statements should be suppressed. He argued that the statements of Ms. Olguin, who was a resident in his home, that her statements should be suppressed and that all of that information, the contraband in the vehicle, his post-arrest statements, and the statements of Ms. Olguin, were then placed in the affidavit for the search warrant application, thus tainting the warrant and making then the search warrant that was then effectuated on his home, where they found methamphetamine, also improper, and asked that that matter be suppressed as well. That's what we will be asking of this Court today, in addition. The government has contended that Mr. Alderete's argument that the entry into his statements has been waived pursuant to Rule 12. Mr. Alderete's reply brief squarely addresses this issue, and that's where I would like to focus my arguments today in the limited time that I have. That's because I believe this Court's analysis necessarily will need to begin there as well. In 2014, Rule 12 of the Federal Rules of Criminal Procedure was amended. That rule governs pretrial motions, including motions to suppress. Of primary concern of those amendments was the fact that the term waiver was removed from the rule. That left up for debate whether or not failure to subject to plenary review on appeal. This Court's most recent precedent, and in fact only published precedent on the matter since the amendments to the rule, is United States v. Vance. That was published two days after Mr. Alderete's reply brief. Vance continued to rely on Burke, which was a case of analyzing Rule 12 when Rule 12 still had the waiver language in it. Interestingly, footnote 5 of United States v. Vance mentions that the appellant in Vance had failed to argue that Rule 12, the amendments to Rule 12, had altered the status of the law, which previously had been waiver. Not only interesting, but helpful, right? Well, it turned out to be helpful. When I first saw Vance had been issued, I was a little bit concerned. But the footnote makes clear that this issue really isn't squarely resolved because the appellant in Vance hadn't argued it, and that that court was frankly stuck or bound by its prior precedent. Post-2014, the text of that rule still refers to a good cause requirement, right? That's correct. And that requirement continues on, right? The good cause piece still exists. And so even irrespective of whether we're talking waiver or forfeiture, there has to be good cause for the untimely raising of the matter, the argument, right? Before the trial court. The good cause analysis, the discussion about where the good cause needs to be shown, is to the trial court. And if this was good cause? The good cause analysis is for the trial court. If you raise the issue untimely, which is what the rule now requires, just discusses as untimeliness, the defendant can still raise it in front of the trial court if it can show good cause for failure to do it timely. Well, in our opinions, even under the regime where we have waiver, we look to whether there was good cause. Once we determined that there had been a waiver, there was an analysis of whether good cause had been shown. I don't remember the exact case, but I read exactly a case in connection with this case where we did exactly that. That is correct. There is a prior case where you did undertake a good cause analysis. Well, you've given us zip to work on in that regard, haven't you? Your reply brief never even attempts to make any argument for why it was good cause that this is untimely, right? That's correct, Your Honor. And none of that was brought before the trial court. And you didn't make an argument to us as to why it should be deemed a good cause now. That's correct, Your Honor. And in part, that's because this court has previously held that sort of trial counselor's mere failure to raise it is not good cause. And I don't have anything in the record which would suggest as to why it was not raised. Well, I appreciate you being cognizant of what our prior case law is on the question of what the contours of good cause is, but isn't the waiver means we're in a plain error standard, and you accept the premise that good cause is still a condition in the rule. You haven't shown good cause. You know, the syllogism plays out that you've got no case on this issue, right? If I agree with the premise that the good cause analysis applies to the appellate court, I do not agree that that's the evidence. Okay. You agree there's a case where we did do it, right? I think there is a prior case where you did that, yes. Okay. Prior to the amendments, and I understand the discussion of good cause did not change in that rule, but the committee minutes about the amendments specifically state, in fact, it's on pages 24 through 26 of the April 25, 2013 minutes, specifically state that, in fact, the analysis of good cause was directed to the trial courts, that it wanted to give the trial court or the district court ample leeway in In addition, that rule also, those comments also make clear that it did not then address the appellate standard. In fact, those notes make clear we did not want to tie the hands of the appellate court and stated that, in fact, it thought, quite frankly, that appellate courts might now revert to a plain error analysis. So that's in the, that's instructive, and the case law also makes clear that while those No, go ahead. It may be instructive, but for the same reason that in Vance, we, well, for a similar reason, that we ended up following a certain line of decision making because the appellant didn't make an argument. In this situation, if you haven't made an argument for why the good cause requirement doesn't apply to you, you know, which you didn't, in your reply brief, there's nothing that says that, then why shouldn't we, why are we bound to operate in the notion that there's a void there? There's nothing that's been said on the face of it. There appears to be a good cause requirement. You haven't given us any reason or argument in this argument you're giving us now based upon the committee minutes. You didn't make that argument in your reply brief. So we have nothing that's on paper that says what you're saying right now, and it's not necessarily self-evident to me why they wouldn't apply in this context, particularly since we have a prior case where we did apply them. And you're correct. That's not in my reply brief. You are absolutely correct. The reply brief is premised on the notion that that good cause is directed at the trial court and then, therefore, not needing to be addressed before the appellate court because the appellate court isn't bound by the good cause piece, simply bound by, are we talking about a waiver or a forfeiture, which would be subject to analysis. And Burke looks at the language, the prior practice, and policy. If we look at those today, those things do the same thing in supporting that a failure to raise a motion to suppress ought to be dealt with as a forfeiture and subject to plein air review. Undoubtedly, the waiver language is now gone from the amendment, from the rule, and the history makes clear that the text matters. Previously, Rule 12 at times prior to that, it did not contain waiver language. When it did not contain waiver language, the courts then subjected it to a plein air review. When it contained the waiver analysis, as we'll see, sometimes the courts were still split, but the courts certainly acknowledged the fact that the waiver language existed in the rule. If you look at more, again, at those minutes in the commentary about the rule, it was clear that the waiver was removed because it didn't make sense. A waiver is an intentional relinquishment of a known right. On the ground, a failure to raise a motion to suppress doesn't occur in that fashion. No one is standing up before the court saying, I understand I might have a constitutional violation, but I waive it, Your Honor. That's not what happens. It's mere failure or neglect. Let me ask this, though. It seems to me that even if it's put aside waiver, put aside good cause, let's say we're talking only about plein air. We have collected in a case called United States v. Hamilton, there was a long footnote talking about the notion that in our prior cases where we have dealt with plein air, we have in many cases where we applied plein air as opposed to waiver. In many cases, we either refused to apply plein air because the record was undeveloped and therefore we couldn't do it because plein air is not a question. You shouldn't apply plein air review where facts are in contention. We either did that or we took the view that it couldn't be clear or obvious to the court because the record was unsettled. We applied one of those two theories, and in both of those theories, the defendant would lose. So the only way it would seem to me that even in the world of plein air that you could win is if you could say that somehow or other it was impossible for if the government had been on notice of your theory that it was a Fourth Amendment violation to enter that house, that they could not have put on evidence of exceptions to the warrant requirement so that they could prevail, so that they could create an issue. Because do you accept that premise? Because it seems to me the you're going to get heard because the record may not be sufficient to address the issue. I agree. I agree. Plein air is incredibly high standard. I agree with you. What you see in Mr. Alderady's case is plein air. So for example, what we have argued now on appeal is that the warrantless entry into Mr. Alderady's home is a clear violation of law. The government always has the burden of proof. The government knows that if its officers go into a home without a warrant... Did they know you were challenging as a Fourth Amendment violation the entry into the home? That was not specifically raised. Well, if they don't know that, then how do they know to elicit testimony from the agents as to what the exception would be that would cover that? Do they? Would they know to do that? I think they do know to do that, Your Honor, because they know that when an officer does not consent or exigent circumstances. What's also interesting in Mr. Alderady's case... And if the defendant is not challenging that, why would they introduce anything on that? Well, they did. Well, they may have done that. But if I know that you're challenging something, I'm going to be a little more robust about it than if I don't know. If I think you're not challenging that, right? I agree with that. And I think that's... I can describe where the evidence is that the court is not going to elicit that testimony. But in addition, that's where the plain air review, that analysis, automatically suffices to take care of the court's concern. Because it does have to be a clear rule of law. It has to be a clear violation of that rule. It has to affect the substantial right. And then this court can then, if it chooses, utilize its discretion. So the elements and the standards that are necessarily implicated in plain air takes care of that concern. That there's no sandbagging of the prosecutor. Because the prosecutor knows that if the court when an officer goes into a home without a warrant, he better have an exception to the warrant requirement. And isn't there, in order for the court to rule on an exception, there has to be an eliciting of testimony and evidence to shore up whether the exception exists or not. You're only going to do that if you know that somebody's challenging something. That's the point. You could only do that if you know. But I can tell you in this case, the government did elicit testimony. I talked to two different individuals who said, why did you enter the home? And the testimony and the response was, officer safety with no other explanation except for that blanket assertion. And because we thought there might be drugs in the home. Why would they offer any other assertion but a blanket one if they didn't know there was any reason to do anything else? Because the government always bears the burden of proof. The government always knows that it had better follow the law. The warrantless entry is a clear statement of the law. So the government should be looking for every potential legal violation that exists in a search and know that their obligation is to follow the law and therefore introduce evidence on it whether you challenge it or not. I think they're under an obligation to make sure that what they're presenting in terms of the basis for supporting their evidence is obtained lawfully, yes. Counsel, in looking at your argument, trying to formulate, okay, if I were writing, how would I formulate a rule involving this question now under whether there's a waiver or not? And I kept coming back almost to where Judge Holmes, it's almost a trial by ambush. And I know as a district court judge, the minute the government started going off on something like that, I said, why are you wasting my time? They've not raised that. Let's get on with the problem. And I see this the same way that Judge Holmes is looking at it. We haven't done away, we've said the waiver is out now. But that still doesn't mean that you've got to give some kind of notice that this is what you're relying on. Don't you agree with that? Well, I don't think so. I think you're saying, no, the responsibility is totally on the government to anticipate all of these. I think there is a responsibility on the government. And let me tell you why I feel passionate about that. It's because when we look at who's in the best position to prevent the error and who bears the greatest consequence. If you claim there's been an illegal entry, you're the best position to say there's been an illegal entry. Certainly. And my time is up. May I answer your question? Yes, please. So it's the individual defendant who has no ability to raise that on their own, but it's the individual defendant who bears the greatest consequence.  And under a waiver analysis, there is no remedy for that individual defendant who had no opportunity and whose liberty is at stake. And because of that, we have to balance that slightly more against the government or the court or defense counsel. But we can't allow that to be that the individual defendant is the one that bears that whole burden. Thank you very much. Counsel, please. You say inevitable discovery doctrine. So you're not saying that you're saying the search was unlawful? So the inevitable discovery argument, I guess, would be our argument in the alternative. I'm also happy to defend it on probable cause. But I do think the inevitable discovery argument is so strong that it is my starting point. So first, there was extensive damage to the windshield, which made it extremely unsafe to drive. The officer who conducted the stop testified that he would have impounded the car based on that damage alone. And that would have required an inventory search. But in the alternative, the record is clear that no one in the defendant's truck had a valid driver's license, which means that even if the officers didn't impound the car, they still couldn't let anyone drive it away. So at the very least, they're going to park and lock the car. And again, both officers at the scene of the stop testified that even when you're just doing a park and lock, you have to do an inventory search beforehand. So whether it was the damage to the windshield or the fact that no one had a driver's license, it was inevitable that the officers were going to search the defendant's truck, find the cocaine, and arrest him. And the defendant's post-arrest statements, along with the uncontested parts of the warrant, are enough for probable cause. Turning to the question of whether the defendant waived his illegal entry claim when he failed to raise it in the district court. In a long line of cases, this court has held that if a defendant doesn't make a specific argument in his motion to suppress, or if he doesn't bring a suppression motion at all, those arguments are waived on appeal. And when I say waived, I mean they are completely barred. Plain error, Rule 52, does not apply. And the only exception has been for if the defendant makes a showing of good cause. Actually, we had a confused mess prior to Burke, and I know that intimately from Hamilton. And so it was not clear at all that it was waiver. We had a bunch of plain error cases post-Burke that ignored that language. Is that not correct? I think there has been some confusion post-Burke. I do think Burke really did... No, I'm talking pre-Burke. Pre-Burke, yes. And Burke, obviously, Burke was designed to clarify those problems. I mean, Burke says, look, we've been all over the place. We want to settle this once and for all. And I think Burke is still good law. Obviously, the policy is based on Rule 12. And Rule 12 was amended in 2014. And the defendant is saying that as a result of those amendments, these unpreserved claims are no longer barred absent good cause, but are now actually subject to Rule 52 plain error standard. But again, just a few months ago, this Court rejected that idea in the published opinion of United States v. Vance. This Court acknowledged that there had been changes to Rule 12, but it still held that these unpreserved claims are barred absent good cause. And the famous footnote 5, though, noted that there was no argument really essentially made to the contrary in terms of the lack of viability of Burke. So we didn't have occasion to decide it there, right? So I think footnote 5 obviously poses some difficulty. It does. Our position is that because Vance directly addresses this issue and resolves it, it should control here. The Court went out of its way to decide an issue that the defendant himself hadn't raised, and the Court went on to actually make the arguments against the defendant's position and express an opinion on it. I can pull up footnote 5, but I don't recall. My recollection is not to that effect. In fact, we said we don't have to decide this issue because the defendant doesn't argue it, right? I guess my recollection, I'm about to get corrected here, is that the Court said it wasn't raised. But I'm not sure it explicitly said we don't have to decide that here. That's okay. It says absent any argument at all on the part of Vance about the continued viability of Burke, this panel remains bound by that decision. Absent any argument, the conditional clause, meaning there is no argument being made that Burke's not valid, right? Yes, obviously there was no argument being made that Burke wasn't valid. I think a court coming out and, you know, continuing to be bound by something is at least strong, but if the Court disagrees... Let me just ask you, whether we disagree or not, let me just move on, okay? Let's assume for the moment that it's still in play, the whole question of what the implication is post-2014 amendments. Do you agree that there is... Well, what is your position on the notion of what is the operation of this good cause requirement? Do we have to do a good cause analysis? Is it still viable post-2014 amendments? I mean, the words appear in the text of the rule, so what is the implication of that now? Sure, so I guess my interpretation of what happened is these amendments are about precision of language. The advisory committee notes explain that the word waiver was removed to avoid confusion because obviously this term waiver is associated with the idea of a party intentionally, deliberately relinquishing a specific claim or argument. And the committee wanted to explain that's actually never been the standard for these claims. You know, this confusion was created kind of by Olano, which set out that distinction. And the committee just wanted to avoid that confusion, clarify the language, and retain the existing standard, which it explicitly says in the committee notes we are retaining the existing standard, which it says a party seeking relief has to show good cause. Okay, but then the question, which was not put on paper as far as I know, but the argument that was made here, that somehow that good cause requirement is a point directed to the trial court and that we wouldn't look at whether good cause was present, what's your view on that? So my view on that, you know, again, it's problematic because this is coming out of the minutes from the advisory committee note meeting, which were certainly never briefed, but, you know, to discuss the point. What is their effect anyway? I mean, their minutes, they're not in the rules. I mean, even the notes have, you know, are just persuasive. So looking at the minutes, that's kind of just background info if you want to take it would be my position. Okay. But so I guess I would take a more textual approach in determining, you know, where this good cause standard is directed. And I'm not aware, at least in this circuit, of anyone interpreting Rule 12 before saying good cause was exclusively directed at a trial court. And again, the notes say we're retaining the existing standard. So if we've never said that before, I'm not sure why it's changing now. And then also... And interestingly, we've applied waiver using Rule 12, which under the logic of the defendant, Rule 12 would be directed at the trial court full stop. Right. And then we wouldn't be called upon to apply waiver at all, right? Yes. And well, then let me just move on quickly to this plain error issue. Let's assume we are in the world of plain error. What would be your argument about whether the government could have done more or whether the government did all that it had to defend that search? I mean, I think this case is a good example of why that reasoning falls short. And also, this is one of the real policy reasons supporting what was the rule sort of established in Burke, which is that when a defendant is raising these claims for the first time on appeal, we're going to have at least two problems. The first is the government was deprived of the opportunity to build a record in its defense. In this case, yes, there's a handful of statements in a 300-page transcript about the entry. But, of course, the trial attorneys never elicited any testimony about, you know, were there exigent circumstances? Were they concerned about somebody needing help? And the fact that it's not in there doesn't mean that they didn't exist. It just meant that, you know, the trial attorney was being efficient and trying not to bring irrelevant information into the proceeding. Well, phrased another way, is there any or were there any statements made by the agent that would entirely preclude the possibility of developing further evidence below? In other words, you could conceive of a situation where you did elicit a certain amount of information and that certain amount of information you elicited was from an agent who said, no, there were not exigent circumstances. Of course. I would say the testimony in this case is not inconsistent with there being an exception like exigent circumstances. So that testimony isn't in there. But it's certainly, I would say this isn't an illegal entry that's clear or obvious because we just don't have any information about that. And, you know, this also goes to the second problem with these claims, which is then you're putting this court in a really difficult position of trying to figure these cases out on an insufficient record or, I mean, this rule also applies where a defendant fails to make a suppression motion at all. So these claims could come up with no suppression hearing whatsoever. I mean, I guess the answer there is easy because there's no facts whatsoever. But, you know, I think that poses real problems for this court on appeal. But I do also, you know, even if this claim wasn't waived and the court goes the other direction, I do think the court should still reject it on the merits. And that's because the defendant is arguing that Ms. Olgin's statements should be suppressed because they are the result of an illegal entry and are therefore fruit of the poisonous tree. But I don't think suppression would be justified here because the causal link between any illegal entry and Ms. Olgin's statements is too remote. And so the attenuation doctrine applies here. And I think to that end there are two important intervening events that the court should consider. Couldn't she talk if she wanted to, even if it was an illegal entry? Yes. That goes to one of my points, which is that in United States v. Cicilline, the Supreme Court says, you know, people giving evidence is very different than the sort of immutable physical evidence that you discover just kind of barging in. And there's a lot of – it's an act of free will. It's voluntary. She decided to, you know, waive her Miranda rights and talk to the police. She decided that she would answer their questions about the defendant's activities. And she decided exactly what she would tell them about the defendant's activities. And that voluntary act is an intervening event that breaks the causal chain between an illegal entry and the police discovering this evidence. Does the defendant even have standing to contest her decision to make statements? I mean, I think that could be in play here. You know, the fact that it does go to ultimately incriminating statements that are used against him in the warrant I think maybe gives him some standing. But, yes. And then the other intervening event I would like to talk about. Well, it's his home, right? Sorry? They violated his – Yes. It's his mother's home. Yes. Okay. Well, it was her home too, though, right? She had been living there, I believe, for a month to three months, depending on where on the record you look. Okay. But the home was not owned by either the defendant or the girlfriend. No. It was owned by the mother. Right. And so the other intervening event, of course, is this outstanding arrest warrant for Ms. Olgan on a completely unrelated forgery charge. And in the Supreme Court's recent decision in Utah v. Streep, it told us that a valid arrest warrant is also an intervening event that breaks the causal chain between police misconduct and the discovery of evidence. And so for purposes of the fruit of the poisonous tree analysis, we consider the taint removed and the evidence admissible. Going back to one of your initial points, however, at the end of the day, we could throw – the question is whether excluding Ms. Olgan's statements, excluding the evidence gained from the entry of the home, whether if standing alone the evidence gained from the search of the car and the post-arrest statements, if standing alone, if that's valid, then there's nothing else to talk about, right? Yes. I mean, that would have supported the search of the home. Yes. And so we don't have to deal with the legal reentry issue. We don't have to deal with any of that. You could completely ignore that issue because the defendant's post-arrest statements are sufficient, again, along with the other stuff in the warrant that we're not arguing about. Yes. Because the defendant says, there's cocaine in my trailer. Yes. That is probable cause for searching for cocaine in a trailer. If the Court has no further questions, I will cede the remainder of my time. Thank you, Counsel. Any rebuttal? Okay. I'm sorry. If I might. Of course. Counsel, please. Well, I don't have any questions. I just want to tell both counsel that you presented an argument that we recognize, and you both did a very good job of responding to our questions, and it puts you kind of in the difficult. We don't know whether we've still got a mess or not, but we're going to do our best to look at it. And just thank you both. Thank you, Counsel. We are adjourned.